THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 23 CR 384-2 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| JOSHUA BROUGHTON | ) | |
| | ) | |

## OPINION AND ORDER

Defendant Joshua Broughton moves to sever his trial from his three co-defendants. (Dkt. 136). Broughton contends that severing is proper because the evidence against him is minimal compared with his co-defendants. (*Id.*) He also notes that his co-defendants may raise antagonistic defenses. (*Id.*) The Government opposes Broughton's motion, responding that he failed to show actual prejudice and severance would create duplicative trials. (Dkt. 142). For the reasons below, the Court denies Broughton's motion.

## BACKGROUND

The Government charged all four defendants with the murder of Ogonnia Okeke. (Dkt. 47). The Government charged them under 18 U.S.C. §§ 1959(a)(1)-(2) for murder in aid of racketeering activities (Count 1) and 18 U.S.C. §§ 924(j)(1)-(2) for using, carrying, brandishing, and discharging a firearm during and in relation to the murder in aid of racketeering activities causing the death of Ogonnia Okeke (Count 2). (*Id.* at 1-5). The Government charged only Defendant Singleton under 18 U.S.C. § 875(c) for threating to injure another (Count 3). (*Id.* at 6).

Broughton moved to sever the trial, seeking to be tried separately from the other defendants. (Dkt. 136). In that motion, Broughton contends that the evidence against him is "substantially less" than his co-defendants, creating a "significant risk" that evidence for other co-

defendants "may be improperly" imputed to him. (*Id.* at 3). In fact, Broughton asserts that the "cumulative amount of evidence against the other defendants" is so great that there is a "strong likelihood" the jury will use it "to infer" Broughton's guilt. (*Id.* at 4). He contends that the evidentiary "spillover" will prejudice him at trial. (*Id.* at 4-6).

On top of the disproportionate evidence, Broughton contends that, without severance, the defendants will "necessarily" resort to finger "pointing at each other to exculpate themselves and improve their position in the eyes of the jury." (*Id.* at 6). He asserts that the "danger" for antagonistic defenses is "heightened"—creating a "trial by ambush" as "no due process or prior notice requirements attach to Co-defendants." (*Id.*) In addition, Broughton claims there "will be substantial and significant differences" in defendants' trial tactics. (*Id.*) Although, Broughton concedes that these issues "alone [are] not a reason to grant severance" and "the defenses [here] may not fully meet [the] mutually exclusive standard." (*Id.*)

The Government calls the "risk of 'spillover evidence'" "non-existent" because all defendants were in the enterprise, committed the murder, and charged under Counts 1 and 2. (Dkt. 142 at 4). The Government argues that the evidence for Count 3 is admissible for Counts 1 and 2, and the evidence for Counts 1 and 2 overlap "in substantial part." (*Id.* at 4-5). The Government states that Broughton was not "a minor participant" in the enterprise or murder, but a "high-ranking member . . . instrumental in the plan to look for 'opps' on the day of Ogonnia Okeke's murder." (*Id.* at 5). The Government further asserts that Broughton fails to rebut the presumptions that the jury can sort evidence and follow instructions for each defendant. (*Id.* at 6); (*see also id.* at 7). Finally, the Government stresses that antagonistic defenses warrant severance only when they reach "the point of being irreconcilable and mutually exclusive" and that Broughton failed to "meet this high burden." (*Id.* at 8).

## **LEGAL STANDARD**

The Government "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "There is a preference in the federal system for joint trials of defendants who are indicted together" because they "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quotes omitted). "It is well settled that co-conspirators who are charged together generally should be tried together." *United States v. Goodwin*, 496 F.3d 636, 644 (7th Cir. 2007). Severance may be proper when joinder creates actual prejudice for a defendant, causing them to lose their right to a fair trial. Fed. R. Crim. P. 14(a). Courts consider several factors for actual prejudice: "(1) conflicting and irreconcilable defenses; (2) a massive and complex amount of evidence that makes it almost impossible for the jury to separate evidence as to each defendant; (3) a codefendant's statement that incriminates the defendant; and (4) a gross disparity of evidence between the defendants." *United States v. Clark*, 989 F.2d 1490, 1499 (7th Cir. 1993).

## **DISCUSSION**

### I.     **Actual Prejudice**

Broughton bears a "heavy burden" to sever the trial. *United States v. White*, 737 F.3d 1121, 1133 (7th Cir. 2013). Broughton must show that joinder denies him his "right to a fair trial." *United States v. Maggard*, 865 F.3d 960, 972 (7th Cir. 2017).

First, Broughton failed to identify conflicting and irreconcilable defenses. (Dkt. 136); *Clark*, 989 F.2d at 1499. Broughton concedes that defendants' defenses "may or may not be antagonistic." (Dkt. 136 at 6). Yet, Broughton still maintains that a joint trial will "necessarily" cause defendants to blame each other and resort to finger pointing. (*Id.*) Broughton provides no

3

evidence to support this assertion. (*Id.*) Rather, Broughton admits that he is "not privy to the trial strategies of his three codefendants, but can only presume that their defenses will be irreconcilable and mutually exclusive." (Dkt. 147 at 3). The Court declines to make such a presumption. While Broughton may be concerned that his defense may conflict with that of another defendant, he has given the Court no evidence that this is the case. By all accounts, defendants' defenses could align to corroborate innocence. At any rate, "[f]inger-pointing among the defendants is not only acceptable but also a benefit of a joint trial, for it helps the jury to assess the role of each defendant." *United States v. Hoover*, 246 F.3d 1054, 1061 (7th Cir. 2001).

Second, Broughton failed to show a massive and complex amount of evidence making it nearly impossible for the jury to separate evidence between defendants. (Dkt. 136); *Clark*, 989 F.2d at 1499. Broughton provides nothing showing an evidentiary disparity. (Dkt. 136 at 3-6); (Dkt. 147 at 1-4) (no affidavits, exhibits, or examples submitted). With no insight into the volume, complexity, or apparent disparities of the evidence, Broughton again asks the Court to make broad presumptions on an empty record. The Court again declines. This case presents a straightforward indictment charging four defendants with a single murder using firearms in furtherance of gang activity. (Dkt. 47). Broughton fails to show why the jury could not separate evidence between him and three other defendants. (Dkt. 136 at 4). He instead repeatedly surmises that there "is a strong likelihood" the jury will use evidence linked to one defendant against him. (*Id.*) Yet, he failsto support this suspicion. (*Id.*) In any event, "[o]rdinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). Broughton then argues that "curative-type instructions" will not work. (Dkt. 136 at 4). He again provides no basis for this assertion. (*Id.*) Even if he did, it would not overcome the "almost

invariable assumption of the law that jurors follow their instructions[.]" *Richardson*, 481 U.S. at 206. "The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *Francis v. Franklin*, 471 U.S. 307, 324, n. 9 (1985). To be sure, "[c]ases may arise in which the risk of prejudice inhering in material put before the jury may be so great that even a limiting instruction will not adequately protect a criminal defendant's constitutional rights"; but "[a]bsent such extraordinary situations," the Court adheres to "the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions." *Id.* This is not an "extraordinary" case requiring severance. *Id.*

Third, Broughton submitted no incriminating statements from his co-defendants. (Dkt. 136); *Clark*, 989 F.2d at 1499. In fact, Broughton admitted he does *not* know—nor is privy to— his co-defendants' defenses. *Supra* at 3-4. Broughton failed to show how any co-defendants' statement would incriminate him. *Id.*; *Clark*, 989 F.2d at 1499. "To justify severance, a defendant must provide some support, such as an affidavit or recorded testimony, that his co-defendant would testify in a manner which would exculpate him. Severance cannot be granted on the basis of a vague, unsupported assertion that a co-defendant would testify favorably in a separate proceeding." *United States v. Balzano*, 916 F.2d 1273, 1283-84 (7th Cir. 1990) (quotes omitted).

Fourth, Broughton's primary argument is that there is a gross disparity of evidence between him and the other defendants. (Dkt. 136 at 1-5); (Dkt. 147 at 1-4). To be sure, Broughton repeatedly argues that the evidence against him is scant while the evidence against his co-defendants is voluminous. (*Id.*); *supra* at 1-2. Again, he fails to support this allegation. *Id.* For example, Broughton could have attempted to show the Court how much more evidence the other co-defendants have against them compared with him. He did not. He also could have attempted to

5

show how the evidence against his co-defendants is more damning (while his more exculpatory). He again did not. Broughton instead relies on speculation and unsupported contentions—asking the Court to make far-reaching assumptions about evidence it has not seen and arguments it has not heard. *Balzano*, 916 F.2d at 1283-84.

Moreover, Broughton was charged along with three defendants under 18 U.S.C. § 1959 for being a member and acting in furtherance of a criminal enterprise. (Dkt. 47, ¶¶ 1-3). The charges against him implicate common coordinated conduct advancing the enterprise through threats, intimidation, and violence. (*Id.*, ¶ 4). The charges are built on evidence that defendants targeted rival gang members, drove together to find them, and shot and killed the victim during this foray. (*Id.* at 1-7); (Dkt. 1, ¶¶ 1-61). While Broughton may have had a unique role in that enterprise—as the "lookout"—that does not warrant severance. *United States v. Jett*, 908 F.3d 252, 276 (7th Cir. 2018) (affirming denial of a motion to sever, explaining the strong preference for joint trials, and finding co-defendants' "inflammatory evidence" and "atrocious" conduct insufficient for reversal—especially when defendant decided "to join" the "violent conspiracy" where "*his own* conduct endangered plenty of lives in its own right"). Each defendant may have had his own role in the criminality but the concerted effort to commit the crimes according to the indictment shows that each role was necessary to bring about the goal.

Lastly, even assuming prejudice, that alone is insufficient. "Even if a defendant shows prejudice, 'Rule 14 does not require severance'; instead, the rule 'leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.'" *United States v. DeLong*, 2022 WL 823881, at *6 (N.D. Ill. Mar. 18, 2022) (explaining the strong preference for joint trials; denying motion to sever) (quoting *United States v. Morales*, 655 F.3d 608, 625 (7th Cir. 2011)).

## II.     Duplicative Trials

Broughton contends that his severed trial would take "a much shorter time." (Dkt. 147 at 4). That may be true, but it sidesteps the issue. Severance creates duplication. Broughton concedes that there "may be witness and exhibit overlap." (*Id.*) Yet he still asserts that any "inconsistent verdicts" would be "justified based on the evidence." (*Id.*) Broughton does not support this statement. (*Id.*) The Government counters that severance would create two trials with "largely the same witnesses and exhibits." (Dkt. 142 at 8). The Government outlined the overlap it would have to prove (twice over): the murder of Ogonnia Okeke in aid of racketeering; the existence of the Rack City enterprise; the enterprise's conflict with the Princeton Park Gangster Disciples; Broughton's knowledge of his enterprise membership; and Broughton's contributions to the enterprise, murder, and racketeering activity. (*Id.* at 9). On balance, Broughton's showing falls short. "In all but the 'most unusual circumstances' the risk of prejudice arising from a joint trial is 'outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all.'" *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009) (quoting *United States v. Velasquez*, 772 F.2d 1348, 1352 (7th Cir. 1985)). That holds true here; no circumstances warrant severance. *Id.*; *Maggard*, 865 F.3d at 972; *Jett*, 908 F.3d at 276.

**<u>CONCLUSION</u>**

The Court denies Defendant's Motion to Sever [136].


Virginia M. Kendall
United States District Judge

Date: February 6, 2026